Good morning. Will you be the only one speaking? I will. Good morning and may it please the court. My name is Margaret Cuoco and I'm appearing on behalf of plaintiff appellants and with the court's permission I would like to reserve two We are here today asking this court to recognize that FOIA's broad remedial provision authorizes injunctions to order agencies to publicly post records as the statute requires. By contrast, the district court's decision threatens to effectively delete agency's affirmative disclosure obligations and allows agencies to remove records from the public domain even when Congress required that they be publicly available. The district court's central mistake was to follow Crew v. Department of Justice, a DC Circuit decision which characterized its own result as a strange one. It, in that case, felt itself bound by a much earlier precedent in Kennecott Copper, but the problem... So, what's the status of the agency's reposting records to ACES and EA databases? Have all previously removed documents been reposted? They have not, Your Honor. Those two databases no longer exist. There is a new database search tool that the agency has launched which has reposted some, but not all, of the disputed records. The government has conceded that fact. And also, there's whole categories of records that still remain in secret. In addition to that, those that have been reposted are not reposted in the same form as they had been before. And so the government has made no argument, and this case certainly is not moot as a case. So, what injury did the animal organizations actually... Did they suffer, and is their injury the same as the claims under both the FOIA and the APA? Your Honor, the injury here is twofold, and I think this is an important component of this case, is that the plaintiffs here have alleged injury that results not just from the lack of their own individual access or private access to these records, but also an injury that results from the lack of a public access to these records. The plaintiffs... But you didn't seek the agency to post any certain information. You didn't send a request. You didn't ask that it be posted. So, I think my colleague's question is pretty important. Where's your injury? Yes, Your Honor. So, let me take that second part first about sending in a request. So, the government has kind of insisted on the one hand that exhaustion of some variety is required to enforce the agency's affirmative obligations under FOIA. But on the other hand, at the administrative level, has taken the position that there basically is no procedure to exhaust remedies. So, during the pendency of the litigation in the district court, when the district court, in a preliminary ruling, suggested that exhaustion might be required, the plaintiffs here, in an abundance of caution, did submit a request asking the agency to meet its A2 obligations. And in response to that request, the agency actually took the position that there was no way to ask for that particular remedy. And in fact, the letter that the agency responded with said that it has determined that this submission is not a proper request under FOIA. And perhaps because it became clear that there was a futility of exhaustion at the district court level, the district court never made a final ruling on exhaustion. And I think that if this Court were to reach that question, this Court has squarely held that exhaustion under FOIA is not jurisdictional. It's not required by the statute, but it is prudential. I understand as to exhaustion, but I thought my colleague's questions have to do with standing. Yes, Your Honor. And so the injury here, I think, which does not stem from a request. Because usually, when we look at the cases that she suggested, those cases deal with the standing and the injury occurred when the agency didn't post the information that the people requesting it wanted them to post. Here, nobody's requested anything. It's just a simple, as I understand it, a simple idea that under B, you're supposed to make certain information available for public inspection in an electronic format is there, and when it isn't, I'm injured. I didn't find any case to suggest there's any standing in that kind of a situation. So, Your Honor, the complaint in this case has gone through detailed allegations that have demonstrated plaintiff's standing and injury as a result of lack of access to these records. It includes allegations and, in fact, later submitted declarations by each of plaintiff organizations detailing how they use these records on a nearly daily basis and the resources and expenditures of personnel time and money that they will have to go through in order to request these records under a different provision of FOIA in lieu of accessing them through the database as is legally required. Well, you basically want everything posted so you can download it, too, right? You just want everything posted so it can be downloaded, right, too? And you don't want to have to go through FOIA. Your Honor, the statute requires that these be posted in an electronic format. The downloading mechanism is not a particular component of the claim or the statutory requirement, but it is true that, yes, the statute requires these be posted in an electronic format. Well, I guess I appreciate you trying to answer a question, but I think it goes to the ultimate of what we have here. I didn't find a case which would suggest that under the second that one could have standing simply because one is relying on the government putting something on a particular electronic media. So, Your Honor, the injury to the organization's resources has been recognized as adequate for a standing under Havens Realty, and here the government has not even made an argument that there's a lack of standing, and, of course, that hasn't been briefed before this Court as a result. Well, just because it hasn't been briefed here doesn't mean I can't bring it up. Certainly, Your Honor. I've got to start with the jurisdictional issues. Of course, Your Honor. And here, I think, Havens Realty establishes that an organization does have standing when there's an injury to its own resources and also a frustration of its mission. I'll say there's a second component of the standing allegations and the supporting declarations in this case, which alleges that here plaintiff organizations have undertaken various initiatives where they've advocated for legal requirements, including, for example, local ordinances that depend on access to these databases that have been published for upwards of a decade. And so, for example, the Companion Animal Protection Society has advocated for the affirmatively disclosed in these databases. Also, one such ordinance requires that the actual website for the databases, which no longer exist, be posted in pet shops so that consumers can check them themselves. And this frustration of organizational interest is that their advocacy efforts are now— But here you're arguing that FOIA's judicial review provision authorizes the District Court to order an agency's disclosure of records to the public at large, right? That's what you're arguing. That is correct, Your Honor. And I think here this goes to the crux of the case, which is that the judicial review provision under FOIA is extremely broad. So it grants District Courts the authority to enjoin the agency from withholding agency records. And contrary to the District Court's conclusion, that grant of authority is not limited by the subsequent clause also granting the power to order the production of any agency records improperly withheld by the complainant. If that second clause did limit the first much more broad injunctive power, that beginning phrase would be statutory surplusage, which is the foundational problem that neither Crude nor Kennecott before it actually addressed. But instead, the Supreme Court has described how we should treat a statutory phrase that has one broad clause paired with a much more specific one seemingly encompassed within it in order to give both of them effect. The specific clause should be understood to clarify, but not to limit the broader clause. So the power to order production of records improperly withheld from the complainant may be contained within the more general injunctive power, but it can be given effect by understanding it to clarify what might have been otherwise unclear that the District Court has. Your Honor, the agency issued an actual statement about its final decision to remove these databases from the website, and that statement cited three reasons why the agency was taking this action. One was its commitment to transparency, a second was its desire to meet the informational needs of its stakeholders, and a third was its concerns about privacy.  That doesn't sound arbitrary and capricious. Your Honor, I think that there is something somewhat a bit farcical about saying that a commitment to transparency requires us to remove documents from a website. But regardless of that fact, the agency has to redact things, right? If there are privacy concerns and there's information in there, and that's been an increasing concern. I mean, it's kind of one of those situations, I'm sure you probably weren't happy with the reading room, but then when they took it down, you realized you would be much more happy if it went back up, right? I can't speak to the happiness of the prior reading room situation, but I can say, Your Honor, that the agency But it's kind of like a lot of times we get situations where people really aren't ever happy, but then they get, they realize they're less happy with what the government comes up with the next time. There's two things, Your Honor. One is that, first, the agency always had redacted for privacy concerns in the past. For the entire history of these databases, the records that were posted were in fact redacted under B-6 and B-7C, the privacy exemptions under FOIA. And the second thing to that point, Your Honor, is that here the agency itself had made past representations about its decision to post these databases as a way of meeting its reading room obligations. And so certainly Your Honor's questions go to the merits of an APA claim that we were never able to develop a factual record below because the district court dismissed that claim on the theory that there was an adequate alternative remedy under FOIA. And to that point, I'll say there's some, there's a, there's, I think, a bit of an argument the government makes where it tries to have its cake and eat it too, saying there is no real remedy for an affirmative disclosure violation under FOIA, and yet FOIA provides an adequate alternative precluding APA review. And so it seems to me that your argument here is there is an adequate remedy under FOIA because we can, even on the second provision, use our power under 4B to suggest that you have some ability to bring forth an argument here under FOIA. But even if we can't, which I think is what, frankly, we're struggling with Kennecott Union Utah Copper case. The Crewe case, I think, got to this same provision, same situation. And they said, we don't think we have any power because of Kennecott Copper. And it seems to me then your argument is if we don't have the power under FOIA, then we at least have it under the APA. So send it back and let us, as I understand your argument, let us produce what we need to for our APA claim. Is that what you're arguing? Your Honor, yes. So I think it's correct that if this Court were to decide that FOIA's remedial provision should be read as it naturally is to grant broad injunctive power, including the power to order full disclosure. I understand your argument that way. But if we don't go that way. If you don't go that way, Your Honor, then I think the alternative under the APA is that if FOIA provides no relief for an affirmative disclosure obligation, a violation that is, then the APA does. There being no adequate alternative remedy under FOIA. And if we go that far, what about your second claim under the APA? Yes, Your Honor. I think so the second claim is independent from the alternative APA claim. I understand that. And that second claim is a claim that does not depend on these records being subject to the reading room requirements. The agency here undertook a final agency action to remove two databases it had published for upwards of 10 years from its website and issued a statement explaining its reasons, therefore. And that action, the district court concluded, was also unavailable only because there was an adequate alternative remedy under FOIA. And for the same reasons that it's not adequate as to the first APA claim, it would be inadequate as to the second one as well. I see I have very little time left that I'd like to reserve. I'd like to ask one more question while you're there. And this is the big question as to the second claim. Mm-hmm. It seems to me that most of the documents the agency had previously posted were not necessarily required to be posted. And therefore, if that's so, then I'm trying to figure out why it's an abuse of discretion to do what they did under the APA if I apply Chrysler versus Brown. Yes. Which has the same kind of situation, that most of the documents they posted were not necessarily required to be posted when posted. Yes, Your Honor. So first, of course, plaintiffs vigorously dispute that these records were, in fact, all required to be posted under two different provisions of the reading room requirements, one covering frequently requested records, something that the agency itself acknowledged. I'll direct the Court's attention to the excerpted record at page 185, where the agency represents the requested records, and this was an entire category. But my only way to avoid the answer to my question is to say, I buy your argument that they were all required? No, Your Honor. And I'd say in the alternative, certainly if they were not required to be posted, Chrysler versus Brown is a case that makes clear that FOIA provides a right to have a right to get records released under the Act, but it provides no remedy when an agency necessarily removes records from the public view. Now, to the extent that Your Honor's point is were we to prevail entirely on our FOIA claim, we would not need to reach the second APA claim, I agree. I'm not talking about that. I'm trying to say if I get to your second claim under the APA and you got no claim under FOIA, I'm trying to figure out why it was an abuse of discretion what happened here if I look at Chrysler v. Brown, which had a situation where the agency posted information on its website that was not under legal obligation to post, and then the subjects of that information then were not subject to the challenge. So that's right, Your Honor. So there the plaintiffs were seeking to bring an action to prevent the agency from releasing records, and the Court said FOIA simply provides no cause of action for that final agency decision, akin to here FOIA providing no cause of action for a decision to remove records from the public view. FOIA simply does not speak to that. It speaks to an affirmative obligation to post. So as opposed to the failure to act in accordance with FOIA, here the agency has taken an additional final agency action to remove and change its policy vis-à-vis its disclosure of those records. I understand. Thank you. All right. I'll give you one minute for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, Daniel Tenney for the government. The FOIA provides for an administrative scheme where you can send a request to the agency. The agency can determine whether the request is meritorious, determine whether to provide the documents. Then there's an appeals process. How do you exhaust an A2 violation here if you're someone challenging the A2 violation? I mean, it's the same thing. You send a request to the agency. The statute makes clear, and it's reprinted on page A6 of our addendum. It refers specifically to any person making a request to any agency for records under paragraph 1, 2, or 3 of this subsection. And then it says it's deemed to have exhausted administrative remedies if the agency doesn't satisfy the timing requirements. So it's quite clear in the statute that Congress meant for there to be an exhaustion requirement under A2. How does an individual satisfy the reasonable particularity requirement that you have to do on a FOIA case if you're trying to challenge A2? I mean, I — I mean, you only have to respond to — you only have to — the government — the agencies only have to respond if the documents are described with reasonable particularity. But A2, by definition, sounds like it's really broad, and the government has an obligation to put stuff out there. And how is the party going to do that? Well, ordinarily, you could describe — I mean, there's not an issue here — I mean, the issue here is they didn't exhaust at all. But ordinarily — I mean, the D.C. Circuit has talked about this in the — Well, describe for me how you would draft that — how you would draft an A2 exhaustion argument. I mean, an exhaustion — If there are particular records that you want, you can describe them, and it's no easier or harder to do — But you just used the word particular, right? We're talking about the exhaustion here, and A2 is geared to the affirmative obligation that the agencies have to post things. So how does someone exhaust this claim? If there's a category of records that they want — you know, they say they want the inspection reports from this year to that year. That would describe documents. If there were nuances to that that the agency had to sort out, they could sort it out in the context of the administrative exhaustion requirement. And that is indeed the whole point of the administrative exhaustion requirement. What plaintiffs want to do here is skip all of that and go — But wait a minute. Go ahead. Did you have another — No, no. Go ahead. My colleague is going exactly where I wanted to go. I'm having a tough time understanding what you file, especially given A2 and what it says. But I'm having a bigger time understanding why this wouldn't be futile anyway. It seems to me that you said that you would not even recognize a request under A2 for publication as a proper kind of request. A few responses to that. First of all, what we said was after they filed their lawsuit, then the agency took a position in federal district court, and then the district judge agreed with us, and then they turned around and went back to the agency. That's not how exhaustion works. You're supposed to go to the agency first. So you're saying my answer would have been different if I had started different? Come on. If you said to the district court, we wouldn't think this was a proper kind of request anyway, it seems to me to be futile. Well, that segues nicely to my second answer, Your Honor, which is the agency took a position in response to the request, and then they had an appeal right, which they decided not to exercise. And the point is the way that exhaustion works is you go to the agency, you say, here's what I think you need to do. The agency says we do or we don't, gives its reasons. The agency said a lot of other things in there, too, about the types of records that were at issue and why they weren't subject to A2. And if you think that that's wrong, then you appeal. And then if the agency either doesn't act on your appeal in a timely way, that's set out precisely in the statute, or if the agency disagrees with you, you go to district court, and then the district court reviews the case on the record established before the agency on all of the legal and factual issues that are raised. That's the way FOIA litigation works. But my worry is here. If I argue failure to exhaust here, first of all, it isn't something that I really have to look at because it doesn't have anything to do with my jurisdiction. I can go ahead and deal with it whether they do it or not. But secondly, if I want to make this an easy idea, and I want to make this such that it'll be easier for the district court to determine and me to determine on appeal, I would say, well, let's send this back and let's have FOIA deal with this in the first place. Let's have the agency do that. Well, they tried. And the agency said, this isn't even a proper request. So it seems to me futile to be up here arguing that that's a problem. Well, Your Honor, that argument would work any time you went to the agency and the agency said no. The point, the futility cases that they cite in their reply brief are cases where there's some pre-existing agency policy that makes clear that you're going to lose. And you go to the agency and the agency is just going to cite the policy and say, we've already decided this question. There's no point to any further erring out in the agency proceedings. If you look at the cases they cite, some of which didn't even find that it was futile, but the test that they set out is that test. And here what happened is they went to district court not having exhausted at all. Then the district court said, the relief that you're seeking isn't available and you have to exhaust. And then they said, okay, now we'll try to exhaust. We'll file something with the agency. Then the agency said no. And they say, well, the agency said no. So it's futile. And if you could do it that way, then you could do it that way every single time. Well, but all you're really saying to me is, and I'm making sure that I check you, all you're really saying to me is, if you don't exhaust in the first place, and you say to the complainant, we're going to deny because you didn't exhaust, that the agency will say, no, we're not going to do anything on that. And then you're out of court. What happened here was the court was trying to make it such that the agency had a right, a chance to explain to them what they were doing and explain why and explain what the basis was. And here the agency wouldn't even do that. The agency said this is just not even a proper kind. I mean, if you look at what the agency said, Your Honor, I think you'll see that the agency said a lot more than that. If you'll just cite that for me, because I think you've got bigger issues than that, especially since I can review this whether you exhaust or not. But I mean, that seemed a little uneasy to me. Your Honor, if you look at Excerpts of Record 320 to 321, it's the agency's response. It describes why the records requested are on 321. It describes why the records requested are not final opinions. It explains why they shouldn't be, they aren't frequently requested records. Those are issues that should be aired out before the agency, before you get to federal district court. Let me move to then, it seems to me we get in this case to the same point we got that the other circuit got in Crewe. And the other circuit seemed after they got in Crewe to this point, say that they were bound by Kennecott, Utah, Copper, and therefore there was no way to proceed under A2. I'm not bound by Kennecott, Utah, Copper. It has nothing to do with me. So I guess I'm at the same point, and I'm saying to myself, why then under 555-2A-4B don't I have the right and the power to force the agency to make this information available under FOIA? Your Honor, there's a number of provisions in the FOIA that make clear the way this is supposed to work. I'll start again with A6C, which is on page A6 of our addendum. It makes clear that you're supposed to exhaust your remedies. We're not talking exhaust. I know. Get through that. But it makes clear that even under A2, you're supposed to go through the agency process. Then it says, upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. So it's clear that what the agency is considering is whether to give the documents to the requester. And then what the judicial review provision says is there's de novo review of the agency's action. So it's clear if you just walk through the steps here, that the way it works is that a requester can ask for documents. The point of the FOIA is that people who want the documents can get them. So does FOIA provide any administrative remedy for the public at large? I mean, the public at large can make requests. I don't think the FOIA provides a remedy for people to seek records that they don't themselves want, but they think somebody else might want. It's not terribly surprising that the court wouldn't do that. It would raise a lot of the standing issues that were aired earlier in my colleague's argument. And Kennecott also pointed out that the provisions requiring affirmative disclosure, the FOIA specified what the remedies were going to be for those. It said you can't rely on a document to the detriment of a party who's appearing before the agency unless you've disclosed it. And so if you haven't put it in the Federal Register or you haven't put it in the Reading Room, that's a powerful incentive, the D.C. Circuit quite rightly said, for the agency to do that. And that's how they wanted those provisions to be enforced. Now, subsequent to those provisions, they added the provisions saying frequently requested records should also be put online. And they didn't, at that point, amend the ‑‑ What if the agency decided to permanently take something down from the Reading Room? What would be the remedy then? Well, a person could still request it. And if the person was entitled to it under the FOIA, the person could get it. Would the person get it or would it go back on the Reading Room? I mean, I think that would depend on the circumstances. Our point here is simply that the order that a court would issue would simply be to give it to the person. And so the statutory history ‑‑ But we're talking about the Reading Room, putting it on the website. And you keep focusing on the individual and the complainant. And I think what I'm trying to figure out is how do you enforce the Reading Room provision? Because the way I see your argument, it almost makes it unenforceable. Well, I mean, Congress ‑‑ the question is whether Congress wanted to create a judicial remedy that would allow a person who, him or herself, got the records to then try to make sure that everybody else could get the records. And there's a number of reasons textually that I've discussed. And also historically that Congress wouldn't have wanted to do that. Well, but I'm not sure that that's exactly what we got here. There's three different ways you can go on FOIA. One is they have the duty to and publish certain kinds on the register. The second is that they have to put them on this electronic format. And the third has to do with what a person can do. Second has nothing to do with what a person does. That's correct with regard to the agency's obligations in the first instance, Your Honor. But with respect to the remedial scheme, it's quite clear in a number of places they refer to requests made under each of those provisions. I'll be fair with you. If I adopt your argument, which you make, which is that they have no way to do this under FOIA, then I don't know why they wouldn't have a way to do this under the APA. That seems to be exactly where they ought to go, because the APA is relief. When it's not, there is no remedy under FOIA. Your Honor, if you're accepting for purposes of present discussion that we're correct that Congress declined to provide this type of remedy. That's what I'm trying to do. Okay. I'm not sure I'm accepting it, but if I follow your argument, that's what I say. I was careful to say for present purposes, Your Honor. If you accept for present purposes that Congress declined to do it in the FOIA, then the idea that you could say, okay, well, Congress, when it addressed the question specifically of when individuals could get information from the government that they thought they were entitled to, Congress addressed that issue in an extensive remedial scheme, both administrative and judicial review. Congress determined not to provide that remedy. And then you turn around and you say, but never mind, because we can just go to the APA. Not never mind. Never mind that it isn't under FOIA. And therefore, if there is no remedy under FOIA, why not a remedy under the APA? Well, there is a remedy under the FOIA, Your Honor. They just don't like it. The remedy under the FOIA. There is no remedy, because you're saying they cannot ever force this under FOIA, under the second provision of aid. Well, what they can do is get the records. And what they have is an informational injury. And this circles back to the standing discussion from earlier. But isn't the purpose of the reading room provision to provide access to categories or records without requiring individuals to make FOIA requests? I mean, that's why I pushed you at the very beginning, because I can't, I'm trying to understand what the purpose of A2 is and how it meshes with the exhaustion requirement, but, and filing a FOIA request. Your Honor, there are multiple parts of A2, and they have slightly different purposes. The three that were enacted initially, the ones about the Federal Register and things of that nature, those, the point of those was so that if people were going to appear before the agency, they had access to the materials that would govern those things. And the FOIA specifically addressed how that would be enforced, which was that the agency was prohibited from relying on them in that context. Now, the last provision was added subsequently in 1996. And the reason that was added was simply to streamline the process for people making FOIA requests. And this was clear from the legislative history. What was going on was they said, look, if agencies are spending lots of time over and over processing the same records, instead, if they just release those records, then everyone can get their FOIA request answered faster. So this isn't so much a, we want to make this publicly available. They didn't alter the remedial provisions at that time. They didn't say, and we want to make a remedy because we want these to be available to the public at large. The point of that provision was just so that people could get records more quickly if they requested them. And take those out of the pot of people that, things that people have to request. You do not have to create a judicial remedy for that in order to accomplish that congressional purpose. And Congress did not create such a remedy. And it would be extraordinary to say that when Congress had set out an administrative review scheme with exhaustion, with requirements for how you specify the records, with agency review and judicial review, that you could then just turn around and go to the APA and say, well, even though Congress didn't give it to me in the FOIA, I want it through the APA. I see my time has expired. I'm happy to answer any more questions. No additional questions. Thank you, Your Honor. You have one minute for rebuttal. Thank you, Your Honor. I'd like to just quickly address two things, since I have very little time. The first is the government's argument that somehow this specific remedy about notice could possibly provide a general, broad remedial scheme that Congress envisioned for A2 violations. This simply can't be true. It's not just the frequently requested records provision that would be kind of unaddressed by that type of remedy. Even as to orders or policy statements, this remedy could only ever come into play where it's the agency seeks to use it against a party. So that means if the agency created secret law that relieved a restriction or was treated the public more leniently, but did so in secret in violation of FOIA, there would never be this type of remedy that would ever come into play. The second thing I'll say very briefly is that as to exhaustion, the government's preliminary or tentative policy statement that they don't accept A2 requests. I see my time has expired. It can't be squared with their categorical statement and also their responses in other cases, a record that we could develop more fully if this Court concludes it needs to have a full record on futility to decide the matter. Thank you, Your Honor. Thank you both for your argument. This matter will stand submitted. We're going to take a short recess. We'll be back in 10 minutes. Thank you. All rise.
judges: Callahan, N.R. Smith, Olguin